UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

**CONNIE CHILDRESS**                                              **PLAINTIFF**

**V.**                    **NO. 2:17CV00011-JTR**

**NANCY A. BERRYHILL,**
Acting Commissioner,
**Social Security Administration**                                **DEFENDANT**

## ORDER

### I. Introduction:

Plaintiff, Connie Childress, applied for disability benefits on November 12, 2014, alleging her disability began on October 10, 2014. (Tr. at 70). Her claims were denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied Childress's application. (Tr. at 79). The Appeals Council denied her request for review (Tr. at 1), thereby making the ALJ's decision the final decision of the Commissioner. Childress has requested judicial review.

For the reasons stated below, the Court [1] affirms the decision of the Commissioner.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II. The Commissioner's Decision:

The ALJ found that Childress had not engaged in substantial gainful activity since October 10, 2014, her alleged onset date. (Tr. at 72). She continues to work part time as a server at Cracker Barrel, but her earnings do not meet the substantial gainful activity level. *Id*. At Step Two, the ALJ found that Childress has the following severe impairments: degenerative disc disease status post fusion, rotator cuff tear status post repair, and obesity. *Id.*

After finding that Childress's impairments did not meet or equal a listed impairment (Tr. at 74), the ALJ determined that Childress has the residual functional capacity ("RFC") to perform the full range of sedentary work, except that: (1) she must have a sit/stand option; (2) she can only occasionally stoop to reach at knee level, and can only occasionally kneel with assistance to get back up, crouch, and crawl; (3) she cannot climb ladders, ropes, and scaffolds; and (4) she can only occasionally reach overhead with her left arm. *Id.*

The ALJ found that Childress was unable to perform any past relevant work. (Tr. at 77). Next, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Childress's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including work as a lampshade assembler and a document preparer. (Tr. at 78).

2

Accordingly, the ALJ held that Childress was not disabled. (Tr. at 79).

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B. Childress's Arguments on Appeal

Childress contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that: (1) the RFC for occasional overhead reaching with the left arm exceeded her functional ability; and (2) the ALJ erred in his credibility analysis.

Childress underwent a discectomy and fusion at L5-S1 in December 2009. (Tr. at 375). She continued to have back pain and was treated with narcotics, physical therapy, and a TENS unit. (Tr. at 427-432, 438, 605-740, 838-840). On October 14, 2014, her doctor directed her to wean off all narcotics, because she showed much less discomfort, and he released her to full-time regular duty work. (Tr. at 411-412). In January 2015, Childress's doctor noted that she was off narcotics and was doing fine. (Tr. at 464). The subsequent record does not reflect treatment for her back condition. The failure to seek regular and continuing treatment contradicts allegations of disability. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997). Moreover, Childress does not raise her back condition as grounds for reversal.

Childress focuses her argument on limitations stemming from a left shoulder rotator cuff tear. A March 2015 MRI revealed the shoulder tear. (Tr. at 525). Childress underwent left shoulder arthroscopic subacromial decompression surgery with debridement on May 22, 2015. (Tr. at 527-533). She started physical therapy

4

in May 2015. (Tr. at 548-557). In July 2015, a clinic note showed her shoulder motion was much improved, and her doctor released her to work at the light level. (Tr. at 842-844). Childress had a shoulder steroidal injection on September 4, 2015, and was urged by her doctor to continue strengthening exercises. (Tr. at 361-363). A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009). On October 9, 2015, Childress's doctor found pain with resistance, but decent strength and minimal crepitus. (Tr. at 859-860). Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

On November 3, 2015, Childress reported to her doctor that she was doing a little bit better overall, and he observed that the majority of the shoulder repair was intact. (Tr. at 923). He refilled her pain medications. *Id.* On January 5, 2016, Childress's doctor found that Childress was "pretty functional," with "pretty good" range of motion in her shoulder. (Tr. at 919-920). On February 19, 2016, while Childress said she was pretty active with her left shoulder, her doctor suspected a possible second rotator cuff tear. (Tr. at 917-918). She did not have subsequent objective testing to confirm this, and the medical evidence contains no further treatment records for her shoulder.

Childress submits that she cannot perform the occasional overhead reaching assigned in the RFC. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

The medical record reflects conservative treatment (pain medications, injections, and physical therapy). The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). And Childress reported improvement in her shoulder pain over time; as well, range of motion returned after surgery. Improvement in strength and diminished pain supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968 F.2d 725, 728 (8th Cir. 1992). Finally, Childress continued to work part-time as a restaurant server through the date of the hearing, which job requires some upper extremity exertion. An ability to work with an impairment shows that the impairment is not disabling. *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). The RFC assigned by the ALJ was reflective of the medical record

and incorporated all of Childress's limitations.

Childress argues that the ALJ's credibility analysis was flawed. Before coming to a conclusion on a claimant's credibility, the ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including prior work record, as well as observations by third parties and treating and examining physicians regarding: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).[2]

An ALJ "has a duty to assess the credibility of the claimant and other witnesses." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

The ALJ provided reasons for his credibility determination. He noted that

---

[2] Social Security Ruling 16-3p, 2016 SSR LEXIS 4, removed the word "credibility" from the analysis of a claimant's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. It became effective on March 28, 2016, but the underlying analysis still incorporates the same factors discussed in *Polaski* and requires the ALJ to make a determination based on all evidence in the record. *Martsolf v. Colvin*, No. 6:16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 (W.D. Mo. Jan. 9, 2017). The Court notes that the hearing decision in this case pre-dated the effective date of SSR 16-3p, so the Court assumes the standard credibility analysis here.

Childress could care for her elderly father, cook meals, and finish most activities of daily living. (Tr. at 73). Childress reported also that she could do laundry, care for pets, drive, iron, and attend church. (Tr. at 255-258). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). The ALJ also noted Childress's improvement over time, and pointed out that she weaned herself off her medications. (Tr. at 76). Finally, the fact that no doctor placed physical restrictions on Childress and she continued to work in spite of her injury supports the ALJ's finding that she was less than credible. A lack of physician-imposed restrictions may serve as a reason to discredit a claimant's credibility. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003). The ALJ committed no error in his credibility analysis.

**IV.** **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err in his RFC determination or his credibility analysis.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is AFFIRMED, and Childress's Complaint is DISMISSED, with prejudice.

DATED this 8th day of January, 2018.

                                                                            _____
                                                                            UNITED STATES MAGISTRATE JUDGE